UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KATHERINE P., : | |
|     Plaintiff, : | |
| : | |
| v. : | C.A. No. 21-427JJM |
| : | |
| KILOLO KIJAKAZI, : | |
| Acting Commissioner of Social Security, : | |
|     Defendant. : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On October 7-8, 2019, Plaintiff Katherine P., a "younger" individual, applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act"). Plaintiff had graduated from high school with the support of special education and had limited work history, reflecting a pattern of lost jobs (as a school bus monitor and at a daycare center) due to her feeling of being "overwhelmed" because of her inability to understand instructions, to communicate with children/parents, to learn the register and to handle changes in routine, as well as due to excessive time in the bathroom engaged in compulsive hair pulling. Tr. 41-45, 51. She applied for disability based on the following mental impairments: anxiety disorder, borderline intellectual functioning, learning disorder, bipolar disorder, mood disorder, trichotillomania, obsessive-compulsive disorder and autism spectrum disorder. Plaintiff alleges that she became disabled on September 1, 2016, after she was "let go" from her job as a school bus monitor (following a mental-health-based leave of absence during which she was paid Temporary Disability Insurance) because "[she] couldn't handle the change [to the bus route] and everything." Tr. 43-44. An administrative law judge ("ALJ") found that all of Plaintiff's

impairments were severe at Step Two, but that she retained the RFC[1] to perform simple tasks with occasional interaction with coworkers, supervisors and the public and only simple routine changes in the work setting. Tr. 24. Based on this RFC, which a vocational expert opined permitted such jobs as routing clerk and coin machine collector,[2] Plaintiff's applications were denied.

Now before the Court is Plaintiff's motion for reversal of the decision of the Acting Commissioner of Social Security ("Commissioner") denying her SSI/DIB applications. Defendant Kilolo Kijakazi ("Defendant") has filed a counter motion for an order affirming the Commissioner's decision. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.  Background

Prior to the period relevant to this case, in 2010 (in connection with a prior disability application when Plaintiff was nineteen), an examining psychologist found Plaintiff to have borderline cognitive capacity; inattention due to lack of comprehension and anxiety; extremely low memory functioning and attentional capacity scores; impairment of remembering and processing new information significantly worse than her relatively low full scale IQ would indicate; arithmetic skills at a third-grade level and reading skills at a sixth-grade level; lack of

---

[1] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[2] Neither during the hearing nor on appeal did Plaintiff challenge the ALJ's reliance on the vocational expert's testimony about these representative jobs; therefore, I do not recommend remand on this basis. Nevertheless, I observe that these jobs both appear to require the cognitive capacity, *inter alia*, to count coins, read delivery slips, and use charts. U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed., Rev. 1991), 222.687-022 (routing clerk), 1991 WL 672133; id., 292.687-010 (coin machine collector), 1991 WL 672573. It is difficult to understand how an individual whose arithmetic skills are at the third-grade level, Tr. 286, could perform these jobs. With remand recommended for other reasons, I recommend that the Court direct the ALJ also to reconsider this aspect of the decision.

task persistence; and social difficulties in carrying on a normal conversation outside of family and one friend.  Tr. 286-92.  This examiner nevertheless found that Plaintiff demonstrated "no impairment in her ability to understand, remember and carry out simple instructions."[3]  Tr. 292.

During the relevant period, since 2016, Plaintiff treated exclusively and extensively (generally receiving treatment at least once or twice a month) at Quality Behavior Health ("QBH"), with a psychiatrist, Dr. Ethan Kisch, and a psychiatric nurse practitioner, Nurse Gauthier, as well as with various counselors.  These treating sources endorse diagnoses of autism, bipolar disorder, trichotillomania and learning difficulties, with anxiety and difficulties arising from Plaintiff's inability to understand.  E.g., Tr. 297, 319.  The QBH treating notes, including the portion filled in for mental status examination ("MSE") observations, range from negligible to skimpy and are entirely handwritten, in handwriting that is difficult and at times impossible to decipher.  E.g., Tr. 329, 332.  To the extent that they are readable, except for anxiety, these notes appear to reflect the absence of depression, anger/rage with hair/eyelash pulling partially or completely controlled with medication, although references to the feeling of being overwhelmed and difficulties in understanding others recur.  E.g., Tr. 308, 310, 312, 314, 316, 319, 328.  The other medical evidence for the period in issue is the report of the examining psychologist Dr. Louis Cerbo, who diagnosed a mood disorder, occasional panic attacks, as well as compulsive features, with "prognosis is guarded based upon her compulsive behavior and reading comprehension, which would affect her ability to work in many places."  Tr. 400.  Dr. Cerbo observed that Plaintiff had "guarded affect," and difficulty "discuss[ing] some of her mental health issues."  Tr. 399.  Dr. Cerbo attributed Plaintiff's difficulty in sustaining attention to anxiety.  Id.

---

[3] The record before the Court does not reveal either what happened with this prior disability application or whether the Psychiatric Examination Report discussed in the text was considered or found to be persuasive.

3

These QBH notes and the Cerbo report were reviewed by two state agency non-examining psychologists. On initial review, Dr. Jeffrey Hughes noted that QBH was the "longitudinal tx source," but that the notes were "quite difficult to decipher"; only the pertinent diagnoses are recorded in the Disability Determination Explanation. Tr. 67. Dr. Hughes concluded that "the MER available suggests that she retains the capacity to perform simple, nonsocial tasks at this time." Id. (emphasis added). On reconsideration, Dr. Marcia Coyle found that the "[p]sych evidence supports severe limitations, but none that are marked or of listing level severity." Tr. 84. The ALJ's decision similarly relies on the lack of development of the MSE findings, noting the "[l]imited mental status examination[s]." Tr. 25 (emphasis added). Largely in reliance on the limited information that is readable in the QBH treating notes, including "improvement with treatment, and . . . no consistently impaired mental status examinations," the ALJ found the non-examining psychologists to be persuasive and relied on them for his RFC. Tr. 27.

After the non-examining review was completed, Psychiatric Nurse Gauthier signed two opinions, the first on May 12, 2020, and the second on November 13, 2020. Tr. 418-23, 490-95. Unlike his treating notes, these opinions are well developed, largely readable and very detailed. In both of them, Nurse Gauthier opined that Plaintiff's autism and learning disorders "make it extremely difficult for [Plaintiff] to follow instruction, learn tasks and engage well socially." Tr. 418; see Tr. 418-23, 490-95. His detailed RFC assessment precludes all work. Tr. 420-21, 492-93. Consistently, one of his treating notes from the post-file-review period states, "she knows she can't hold down a job." Tr. 482. Other treating notes for the post-file-review period reflect some worsening: Tr. 463 (anger and confusion increased; "anxious compared to last session"), Tr. 470 ("Anxiety - up lately"), Tr. 485 ("OCD . . . got worse"). Yet, some of the notes for this

period are more benign, similar to the notes that preceded the file review. E.g., 465 ("doing well"). Consistent with Nurse Gauthier's opinions are the statements provided by Plaintiff's mother, which describe her daughter's inability to understand and lack of social competence, including her inability to understand social cues and her literal interpretation of communication, as well as her inability to adapt to changing aspects of life. Tr. 228-35, 275-76. Plaintiff's own statements, particularly in describing her difficulties at the jobs at which she failed, are consistent with Nurse Gauthier's opinions and her mother's statements. Tr. 41-51, 247-54. The ALJ rejected all of this evidence as unpersuasive or not credible for the same reasons why he found the non-examining psychologists persuasive – the "generally normal findings on limited mental status examinations." Tr. 27 (emphasis added).

After the ALJ's decision was rendered, Nurse Gauthier wrote a letter, which was submitted to the Appeals Council,[4] advising that he had read the ALJ's decision and informing the Council that the ALJ's findings were based on a material misinterpretation of his treating notes caused by his practice in recording them. Tr. 9-10. His letter explains his approach to treating notes, which results in a record that does not "document, on a visit-by-visit basis, the details and struggles of the individual," as well as that his observations of stability are in regard to the patient's baseline. Tr. 9. Importantly, his letter states that Plaintiff's "multiple psychiatric and neurological impairments" (such as autism and learning disorders) are not "treated pharmacologically unless there is a secondary behavioral or affective component . . . , such as aggression, self-harm or other manifestations of anxiety"; as a result, Nurse Gauthier explained that his treating notes do not reflect, *inter alia*, Plaintiff's difficulties with comprehension, learning and with interacting with others, which "do not require pharmacologic management."

---

[4] The letter is undated but appears to have been faxed to someone named "Veronica" on January 31, 2021. Tr. 8. It was received by the Appeals Council on March 10, 2021. Tr. at 2.

Id.  In contrast, these are the principal limitations laid out in his opinions.  See Tr. 418-23, 490-95.  In closing, Nurse Gauthier's letter states that he normally does not "help patients with disability claims," but that he was writing in Plaintiff's case due to the nature of her situation."  Tr. 10.  Explaining further, he wrote: "She simply would not be able to hold down a job.  It is intellectually and emotionally too much for her to bear."  Id.

The Appeals Council found that the Gauthier letter "does not show a reasonable probability that it would change the outcome of the decision."  Tr. 2.

**II.     Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence and that Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30.  The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31.  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015. If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Sacilowski v. Saul, 959 F.3d 431, 440-41 (1st Cir. 2020); Randy M. v. Kijakazi, C.A. No. 20-329JJM, 2021 WL 4551141, at *2 (D.R.I. Oct. 5, 2021).

### III.   Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.[5] The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

#### A.   The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. §

---

[5] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, I cite only to one set of these regulations.

404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to SSI claims).

### B. Opinion Evidence

Pursuant to the regulatory changes adopted for claims like this one, filed after March 27, 2017, an ALJ no longer applies the so-called "treating source rule," but now must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 404.1520c. A "medical opinion" for these purposes is defined by 20 C.F.R. § 404.1513(a)(2), which provides in pertinent part:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>     . . .
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting.

The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill,

8

392 F. Supp. 3d 381, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).  Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859.  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Id. at 5854.

### C. Reliance on Experts

An ALJ cannot render a medical opinion in the face of conflicting and inconsistent medical evidence without the assistance of a medical expert.  Santiago v. Sec. of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) ("[A]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.").  If the medical evidence is such that a "reasonable mind might accept [it] as adequate to support a conclusion" of disability, the ALJ cannot rest on his untutored lay analysis to interpret it otherwise.  Sherry B. v. Saul, C.A. No. 20-140-JJM-PAS, 2021 WL 508517, at *2 (D.R.I. Feb. 11, 2021) (quoting Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019)).  However, a medical expert's testimony is not substantial evidence and cannot be relied upon if he was not "privy to parts of [plaintiff's] medical record [which] detracts from the weight that can be afforded [his] opinions."  Ruben M. v. Saul, C.A. No. 19-119MSM, 2020 WL

39037, at *9 (D.R.I. Jan. 3, 2020), adopted, C.A. No. 1:19-CV-00119-MSM-PAS, 2020 WL 555186 (D.R.I. Feb. 4, 2020) (quoting Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *2-3 (D.R.I. Sept. 30, 2018)). In particular, an ALJ cannot rely on a medical expert's opinion if the expert did not see documents indicating that the claimant's condition is different from what the expert found based on what he did see. 2018 WL 4693954, at *3. If the "[c]ourt does not know whether the non-examining state agency physicians would have rendered the same . . . opinions if they had all of the medical evidence," remand is necessary. Mary K. v. Berryhill, 317 F. Supp. 3d 664, 668 (D.R.I. 2018); see Catherine I. v. Saul, C.A. No. 19-394WES, 2020 WL 2730907, at *9 (D.R.I. May 26, 2020).

      **D.**      **Claimant's Subjective Statements**

A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 5180304, at *3. It directs the ALJ to consider the entire case record, including the objective medical evidence, the individual's statements, statements and other information provided by medical sources and other persons, and any other relevant evidence, as well as whether the subjective statements are consistent with the medical signs and laboratory findings. Id. at *4. As the First Circuit recently emphasized, in the absence of direct evidence to rebut a claimant's testimony about subjective symptoms, such statements should be taken as true. Sacilowski, 959 F.3d at 441; Tegan S. v. Saul, 546 F. Supp. 3d 162, 169 (D.R.I. 2021). That is, if proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, the subjective statements must either be explicitly discredited or the

implication of lack of credibility must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); Vanessa C. v. Kijakazi, No. CV 20-363MSM, 2021 WL 3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021).

      **E.**      **Evidence Submitted to Appeals Council**

The Appeals Council must review a case if it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). To find Appeals Council error, the Court must consider whether the Appeals Council's stated reason for declining review is a serious mistake or egregious error. Harlen David O. v. Berryhill, C.A. No. 18-17WES, 2019 WL 2501884, at *14 & n.21 (D.R.I. Feb. 13, 2019), adopted by text order (D.R.I. Mar. 18, 2019). In this Circuit, a challenge to the Appeals Council's decision faces the high bar set by Mills v. Apfel, 244 F.3d 1 (1st Cir. 2001), which holds that it should be afforded "a great deal of latitude" and "great deference." Id. at 5-7; see Cookson v. Colvin, 111 F. Supp. 3d 142, 149 (D.R.I. 2015); Larocque v. Barnhart, 468 F. Supp. 2d 283, 286-87 (D.N.H. 2006). However, if egregious error taints the Appeals Council's determination that the new evidence does not "show there is a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision," Catherine I., 2020 WL 2730907, at *10, remand is required for further consideration by the ALJ, even though he did not make "a mistake" in ignoring evidence that was never presented to him. Mills, 244 F.3d at 5. If the supplementary evidence is starkly inconsistent with the ALJ's determination, and undermines it, the Appeals Council's denial of review constitutes an egregious mistake. Catherine I., 2020 WL 2730907, at *10 (citation omitted).

IV.     **Analysis and Recommendation**

The outcome of this Social Security appeal turns on whether the ALJ erred in finding persuasive[6] and relying on the non-examining state agency psychologists, Dr. Hughes and Dr. Coyle, while rejecting as unpersuasive the two opinions of Plaintiff's longtime treating psychiatric nurse practitioner, Nurse Gauthier, and the report of the examining consultant, Dr. Cerbo.  In addition, Plaintiff challenges the ALJ's finding that Plaintiff's subjective statements are of limited value because they are "not entirely consistent with the medical evidence and other evidence in the record." Tr. 25.  For the reasons that follow, I find that the ALJ's findings lack the support of substantial evidence, that the Appeals Council's treatment of Nurse Gauthier's letter amounts to egregious error and that remand is therefore necessary.

In Tegan S. the Court ordered remand because the treating rheumatologist's notes contained virtually no readable findings, yet he submitted a post-file opinion that established a diagnosis (fibromyalgia) supporting his assessment of severe function-limiting pain and corroborating the claimant's subjective statements.  546 F. Supp. 3d at 166-68.  Here, as in Tegan S., the ALJ and the non-examining psychologists were challenged by the QBH treating sources whose medical records contain, at best, "limited" MSE findings and are recorded in difficult-to-decipher handwriting.  See id. at 165.  Here also, as in Tegan S., the key treating source (Nurse Gauthier) provided a detailed post-file-review pair of opinions (that the file-reviewers did not see), which the ALJ rejected as inconsistent with Nurse Gauthier's skimpy and

---

[6] Without citing to any on-point decision, Plaintiff tosses out the argument that the 2017 amendments to the Social Security regulations that abandoned the "treating source" rule in favor of an analytic framework based on the "persuasiveness" of medical opinions are "arbitrary and capricious." ECF No. 11 at 19.  On reply, she denigrates her own argument as "a less than tertiary part of her case." ECF No. 18 at 4.  Every court that has considered this argument has rejected it.  See, e.g., Harner v. Soc. Sec. Admin., 38 F.4th 892, 897 (11th Cir. 2022); Tasha W. v. Comm'r of Soc. Sec., 3:20-CV-731 (TWD), 2021 WL 2952867, at *6 (N.D.N.Y. July 14, 2021); Dany Z. v. Saul, 531 F. Supp. 3d 871, 883 (D. Vt. Mar. 31, 2021).  Adopting the reasoning of these cases, I decline to recommend that the Court hold that the "persuasiveness" decisional framework is arbitrary and capricious.

12

partially indecipherable treating notes. See id. at 167-68. In rejecting the Gauthier opinions, the ALJ concluded that "[e]vidence submitted after [the file-review] opinions were given does not reveal any significant change in the claimant's mental status or ability to function." Tr. 27. Further, ignoring the references to worsening in the post-file-review record, the ALJ found that "the record [for the post-file-review period] suggests improvement." Id. Accordingly, the ALJ based his decision on the administrative findings of the state agency psychologists, discounted Plaintiff's subjective statements because of their inconsistency with those findings and with the "limited" MSE observations of record, and essentially ignored the statements from Plaintiff's mother.[7]

In Tegan S., these circumstances led to remand because, with only skimpy and partially indecipherable treating notes available to the file reviewers, followed (post-file review) by an expansive, readable and clear opinion from the same treating source, the Court found that remand was required for further development of the record to fill in the "gap," including by inquiring of the treating source whether he could clarify his treating observations. 546 F. Supp. 3d at 171-72. In this case, remand for that purpose is not necessary – Nurse Gauthier's letter submitted to the Appeals Council provides the explanation for the seeming discrepancy between his notes and his opinions. In particular, Nurse Gauthier identifies two of Plaintiff's most limiting symptoms – her cognitive inability to understand and follow instructions and her social inability (due to autism) to comprehend or engage in effective communication – as matters that he was not treating with medication and, therefore, were not the focus of his treating notes. If this seemingly logical explanation is accepted, it becomes clear that the Gauthier opinions are

---

[7] The ALJ's decision states that he "considered" the mother's statements but is silent regarding how they affected the decision. Tr. 28. Because the mother's statements are entirely consistent with the Gauthier opinions and with Plaintiff's subjective statements, it appears to the Court that the mother's statements were treated as having no weight at all.

13

not inconsistent with the Gauthier treating notes; to the contrary, the opinions supplement the notes by adding Nurse Gauthier's longitudinal observations of Plaintiff's functional limitations, which (according to his practice) were not mentioned in his treating notes. With Nurse Gauthier's explanation, this case clearly presents a circumstance where the "[c]ourt does not know whether the non-examining state agency physicians would have rendered the same . . . opinions if they had" both the Gauthier opinions, as well as the Gauthier letter explaining the gaps in the treating notes. Mary K., 317 F. Supp. 3d at 668; see Catherine I., 2020 WL 2730907, at *9. For the same reason, this is also a case where findings of the non-examining psychologists do not amount to substantial evidence in light of the materiality of the Gauthier opinions and notes (with the latter read in light of Nurse Gauthier's explanation) and the other evidence of worsening,[8] of which they were unaware. See Ruben M., 2020 WL 39037, at *9; Virgen C., 2018 WL 4693954, at *2-3.

      Based on the foregoing, I find that the ALJ erred in relying exclusively on the non-examining psychologists and in rejecting Nurse Gauthier's opinion. I further find that Nurse Gauthier's letter of explanation for the seeming discrepancy between his opinions and his treating notes is pivotal to the outcome of the decision and that the Appeals Council's rejection of the Gauthier letter amounts to an egregious error. In addition, I find that the ALJ's credibility assessment of the statements from Plaintiff and her mother is tainted because it rests almost entirely on the Gauthier treating notes interpreted without the benefit of Nurse Gauthier's explanation. Otherwise, this is potentially a case where there is simply no direct evidence to rebut these statements. See Sacilowski, 959 F. 3d at 441. Based on the foregoing, pursuant to

---

[8] An aside, the ALJ somewhat inexplicably found that Plaintiff's post-file review condition reflects "improvement." Tr. 27. The Court's review of that portion of the record exposes this finding as entirely lacking in evidentiary support.

sentence four of 42 U.S.C. § 405(g), I recommend that the matter be remanded[9] to afford the ALJ the opportunity to revisit his disability determination in light of the Gauthier opinions, together with the compelling evidence (the Gauthier letter) provided to the Appeals Council, which the ALJ did not have the chance to review.  Catherine I., 2020 WL 2730907, at *11.  I also recommend that the Court direct the ALJ to reconsider whether the statements from Plaintiff and her mother are consistent with the medical record as properly interpreted in light of the Gauthier opinions and the Gauthier letter's explanation for the lack of reference to Plaintiff's most limiting symptoms in the treating notes.

V.      **Conclusion**

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) be DENIED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 10, 2022

---

[9] Plaintiff asks alternatively for remand for an award of benefits.  I do not so recommend.  With many seemingly benign findings in the medical record (such as the opinion that she can carry out simple instructions, Tr. 292), this is not a case either where the proof is overwhelming, or the proof is very strong and there is no contrary evidence.  Sacilowski, 959 F.3d at 440-41.